[PUBLISH]

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 20-11326

_____

CHESHIRE BRIDGE HOLDINGS, LLC,
CHESHIRE VISUALS, LLC,

Plaintiffs-Counter Defendants-Appellants,

*versus*

CITY OF ATLANTA, GEORGIA,
DANITA M. BROWN,
Chair,
MARTHA PORTER HALL,
Vice Chair,
LINDA SESSLER,
KARL BARNES, et al.,

Defendants-Counter Claimants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:15-cv-03148-TWT

_____

Before JORDAN, BRASHER, and ANDERSON, Circuit Judges.

JORDAN, Circuit Judge:

A little more than 40 years ago, a federal district court in Georgia concluded after a bench trial that the zoning regulations for adult businesses in the Atlanta City Code were constitutionally overbroad in their entirety and permanently enjoined their enforcement. *See Purple Onion, Inc. v. Jackson*, 511 F. Supp. 1207, 1228 (N.D. Ga. 1981). The City did not appeal that judgment, and it became final.

Cheshire Bridge Holdings, LLC, and Cheshire Visuals, LLC, operate an adult novelty and video store known as Tokyo Valentino in Atlanta. They filed a lawsuit asserting that the definitions of "adult bookstore," "adult motion picture theater," "adult mini-motion picture theater," "adult cabaret," and "adult entertainment establishment" in the current Atlanta City Code are facially overbroad in violation of the First Amendment. After an initial appeal and remand, *see Cheshire Bridge Holdings, LLC v. City of Atlanta*, 777 F. App'x 310 (11th Cir. 2019), the district court rejected their

overbreadth challenges and granted summary judgment in favor of the City.

Following a review of the record, and with the benefit of oral argument, we affirm. Contrary to the claim of the Cheshire plaintiffs, the district court did not err in providing a narrowing construction of certain terms in the challenged provisions. The Cheshire plaintiffs, moreover, failed to show that any overbreadth in the provisions is "substantial" as required by Supreme Court precedent.

I

Our review of the district court's summary judgment order is plenary. *See Miller v. Gizmodo Media Grp., LLC*, 994 F.3d 1328, 1329 (11th Cir. 2021). Summary judgment is appropriate if there are no genuine disputes of material fact and a party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).

In a summary judgment appeal, we normally view the facts in the light most favorable to the non-moving party, *see Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014), but because the Cheshire plaintiffs mounted facial overbreadth challenges the underlying facts are largely irrelevant. *See City of Los Angeles v. Patel*, 576 U.S. 409, 415 (2015) ("A facial challenge is an attack on a statute itself as opposed to a particular application."); *Miami Herald Pub. Co. v. City of Hallandale*, 734 F.2d 666, 674 n.4 (11th Cir. 1984) ("In a facial challenge such as this, the facts of the challenging party's case are irrelevant.") (citing *Beckerman v. City of Tupelo*, 664 F.2d

502, 506 (5th Cir. 1981)). Nevertheless, to the extent any disputed facts are material we will resolve the conflict in favor of the Cheshire plaintiffs.

## II

In their initial brief, the Cheshire plaintiffs challenge the Atlanta City Code's definitions of "adult bookstore," "adult motion picture theater," "adult mini-motion picture theater," "adult cabaret," and "adult entertainment establishment." We summarize the Code's zoning scheme and quote the challenged provisions in full before turning to the merits.

The Code prohibits "adult businesses" from being located in community business (C-1) districts, commercial service (C-2) districts, or in any residential (R-1 through R-LC) districts. *See* Atlanta City Code §§ 16-03.003, 16-04.003, 16-04A.003, 16-04B.003, 16-05.003, 16-05A.003, 16-06.003, 16-06A.003, 16-06B.003, 16-06C.003, 16-07.003, 16-08.003, 16-09.003, 16-11.003, 16-12.003. Adult businesses also may not be located within 1000 feet of any other two adult businesses, any public park, any primary or secondary school, or any place of religious worship, and may not be located within 500 feet of the boundary of any residential district. *See* § 16-28.016. Adult businesses are permitted in commercial residential (C-3) districts, central area commercial residential (C-4) districts, central business support (C-5) districts, light industrial (I-1) districts, and heavy industrial (I-2) districts. *See* §§ 16-13.003, 16-14.003, 16-15.003, 16-16.003, 16-17.003.

The challenged Code provisions read as follows:

(3) Adult Businesses:

(a) Adult bookstore: An establishment having a significant portion of its stock in trade, books, magazines, and other periodicals, films, videos, or other media or items which are distinguished or characterized by their emphasis on matters depicting, describing or relating to "specified sexual activities" or "specified anatomical areas," as defined below. For purposes of this subsection, the aforementioned items shall be collectively referred to as "adult material." It shall be presumed that a business shall have a "significant portion of its stock in trade" in adult material if any one or more of the following criteria are satisfied:

1. More than 25 percent of the floor area is devoted to adult material (not including storerooms, stock areas, bathrooms, basements or any portion of the business not open to the public); or

2. More than 25 percent of the gross sales (including rentals) result from the sale or rental of adult material; or

3. Twenty-five percent or more of the dollar value of all merchandise displayed at any time is attributable to adult material; or

4. Twenty-five percent or more of all inventory consists of adult material at any time; or

5. Twenty-five percent or more of the merchandise displayed for sale consists of adult material; or

6. Twenty-five percent or more of the stock in trade consists of adult material at any time.

(b) Adult motion picture theater: An enclosed building with a capacity of 50 or more persons used for presenting material distinguished or characterized by an emphasis on matter depicting, describing or relating to "specified sexual activities" or "specified anatomical areas," as defined below, for observation by patrons therein.

(c) Adult mini-motion picture theater: An enclosed building, or enclosed or semi-enclosed room or booth within an enclosed building, with a capacity for less than 50 persons used for presenting material distinguished or characterized by emphasis on matter depicting, describing or relating to "specified sexual activities" or "specified anatomical areas," as defined below, for observation by patrons therein.

(d) Adult cabaret: An adult entertainment establishment which features go-go dancers, exotic dancers, strippers, or female topless dancers.

(e) Adult entertainment establishment: Any place of business or commercial establishment wherein the entertainment or activity therein consists of nude or substantially nude persons dancing with or without music or engaged in movements of a sexual nature or

movements simulating sexual intercourse, oral copu-
lation, sodomy or masturbation, or wherein the pa-
tron directly or indirectly is charged a fee or required
to make a purchase in order to view entertainment or
activity which consists of persons exhibiting or mod-
eling lingerie or similar undergarments, or where the
patron directly or indirectly is charged a fee to engage
in personal contact by employees, devices or equip-
ment, or by personnel provided by the establishment.
"Substantially nude" as used in this subsection shall
mean dressed in a manner so as to display any portion
of the female breast below the top of the areola or
displaying any portion of any person's pubic hair,
anus, cleft of the buttocks, vulva or genitals. The def-
inition of "adult entertainment establishment" is to
include, but not be limited to, bathhouses, massage
parlors, lingerie modeling studios and related or sim-
ilar activities. Establishments which have as their sole
purpose the improvement of health and physical fit-
ness through special equipment and facilities, rather
than entertainment, as hereinabove described, are
specifically excluded.

(f) Specified sexual activities: (a) Human genitals in a
state of sexual stimulation or arousal; (b) acts of hu-
man masturbation, sexual intercourse or sodomy; (c)
fondling or other erotic touching of human genitals,
pubic region, buttocks or female breasts.

(g) Specified anatomical areas: (a) Less than com-
pletely and opaquely covered: (1) human genitals,

pubic region, (2) buttocks, and (3) female breasts be-
low a point immediately above the top of the areola;
and (b) human male genitals in a discernibly turgid
state, even if completely and opaquely covered.

§ 16-29.001(3).[1]

The challenged provisions do not purport to ban the activi-
ties or conduct they define or describe.  They instead are part of a
zoning scheme regulating where covered establishments can locate
or operate in Atlanta.  As we discuss later, this matters because
"[w]e usually review zoning regulations in this area [of adult enter-
tainment] under the deferential 'time, place, [and] manner' stand-
ard."  *Lady J. Lingerie, Inc. v. City of Jacksonville*, 176 F.3d 1358,
1361 (11th Cir. 1999).

## III

Given the general preference for avoiding constitutional is-
sues when possible, *see, e.g.*, *Rosenberg v. Fleuti*, 374 U.S. 449, 451
(1963), we start with the non-constitutional argument asserted by
the Cheshire plaintiffs—that the district court erred in providing a
narrowing construction of certain terms in the challenged provi-
sions.  We begin there as well because the "first step in overbreadth

---

1 As we explained when the case was here earlier, "[i]n all relevant versions of
the Code, 'adult entertainment' is defined as 'adult business,' which in turn is
defined as 'adult bookstore,' 'adult motion picture theater,' 'adult mini-motion
picture theater,' 'adult cabaret' and 'adult entertainment establishment.'"
Cheshire Bridge Holdings, 777 F. App'x at 314.

analysis is to construe" the provisions being challenged; "it is impossible to determine whether a [law] reaches too far without knowing what [it] covers." *United States v. Stevens*, 559 U.S. 460, 474 (2010) (citation and internal quotation marks omitted).

The Cheshire plaintiffs contend that the district court essentially rewrote certain Code provisions, and in so doing stepped outside its proper role, because no Georgia courts have interpreted them. At the end of the day, we reject the Cheshire plaintiffs' argument, including the suggestion that the district court "diverge[d] substantially" from the text of the provisions. *See* Appellants' Br. at 44.

We have at times declined to provide a "limiting construction to save" a state or local law, explaining that a federal court "must be particularly reluctant to rewrite the terms of a statute." *Bell-South Telecomms., Inc. v. Town of Palm Beach*, 252 F.3d 1169, 1180 n.4 (11th Cir. 2001) (citation and internal quotation marks omitted). But that reluctance, though important, is not an iron-clad rule. The Supreme Court has stated that "[f]acial overbreadth has not been invoked when a limiting construction has been or could be placed on the challenged statute," *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973), and it has provided a narrowing interpretation of a local ordinance in a First Amendment case.

*Frisby v. Schultz*, 487 U.S. 474, 483 (1988), involved a facial First Amendment challenge to a municipal ordinance that constituted a complete ban on picketing "before or about the residence or dwelling of any individual." The Supreme Court explained that

the ordinance was "readily subject to a narrowing construction that avoids constitutional difficulties," and concluded that the use of the words "residence" and "dwelling" by the municipality "suggest[ed] that the ordinance is intended to prohibit only picketing focused on, and taking place in front of, a particular residence." *Id.* at 482 (relying, in part, on a dictionary definition of "picketing"). The Court stated that "[t]o the extent they endorsed a broad reading of the ordinance, the lower [federal] courts ran afoul of the well-established principle that statutes will be interpreted to avoid constitutional difficulties." *Id.* at 483 (citations omitted).

As we read it, *Frisby* teaches that a federal court can in appropriate circumstances provide a limiting construction of a state or local law to avoid constitutional problems. With *Frisby* as a guide, we review the district court's construction of certain terms in the challenged provisions. We undertake our analysis recognizing that the authority to narrowly interpret a state or local law has limits, such that a federal court may not "rewrite a . . . law to conform it to constitutional requirements." *Reno v. Am. C.L. Union*, 521 U.S. 844, 884–85 (1997).

One preliminary matter, however, warrants mention. The Cheshire plaintiffs devote a fair number of pages in their brief to the contention that federal courts should be hesitant to provide a limiting construction of a state or local law to avoid possible constitutional problems. *See* Appellants' Br. at 42–50. But most of their discussion is general in nature, and they only specifically contest the district court's narrowing interpretation of a couple of

terms. Due to the adversarial nature of our system and the party-presentation principle it embodies, *see United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020), we limit our discussion to those terms.[2]

## A

In addressing the Cheshire plaintiffs' argument that the definitions of "adult motion picture theater" and "adult mini-motion picture theater" are overbroad because they are not limited to commercial establishments, the district court noted that the definitions each contain the phrase "for observation by patrons therein." *See* §§ 16-29.001(3)(b)–(c). Citing to the definition of "patron" in Black's Law Dictionary as a "customer or client of a business, esp. a regular one," the district court concluded that "[b]ecause a property must serve 'patrons' in order to qualify as an adult motion picture theater, it follows that only commercial establishments can meet the definitions set forth in the current Code." D.E. 121 at 19 (quoting Black's Law Dictionary 1308 (11th ed. 2019)).

The Cheshire plaintiffs argue that the term "patron" is not necessarily limited to those who pay for a commercial service (e.g.,

---

2 For example, in a single sentence of their brief the Cheshire plaintiffs accuse the district court of improperly construing the term "principal uses" and of using the unwritten word "entirely" to modify the term "consists of." See Appellants' Br. at 49. But there is no further discussion of these alleged errors in the brief. Because a passing reference to an issue is not enough to put the matter before us, see Hamilton v. Southland Christian Sch., Inc., 680 F.3d 1316, 1319 (11th Cir. 2012), we do not address these conclusory assertions.

a "patron of the arts"). We accept the linguistic point, but that does not mean the district court made a mistake. The understanding that "patron" can mean a regular customer of an establishment is a common one, *see, e.g.*, The American Heritage Dictionary of the English Language 1290 (4th ed. 2009) ("[a] customer, especially a regular customer"), and the district court did not err in so limiting the term. The question is not whether the narrow interpretation is mandated by the text, but whether it is reasonable and permissible. *See Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 397 (1988) ("The key to application of this principle is that the statute must be 'readily susceptible' to the limitation[.]"). Although no state courts have interpreted the term "patron" in §§ 16-29.001(3)(b)–(c), at least one older Georgia appellate decision viewed the term as synonymous with "customer." *See Nichols v. Ocean Acc. & Guarantee Corp.*, 27 S.E.2d 764, 767 (Ga. App. 1943) (interpreting the term "customer" in an insurance policy). And one of the other challenged provisions, the one defining an "adult entertainment establishment," speaks of "patrons" in the commercial sense. *See* § 16-29.001(3)(e) (referring in part to "patrons" who are "charged a fee" or are "required to make a purchase").

As noted, no Georgia court has interpreted the "adult motion picture theater" and "adult mini-motion picture theater" provisions in the Code. But the Georgia Supreme Court has not hesitated to provide a limiting construction when addressing a First Amendment challenge to an ordinance prohibiting the sale of alcohol at erotic dance establishments. In *Gravely v. Bacon*, 429 S.E.2d

663, 664 (Ga. 1993), the ordinance at issue contained the phrase "live performances by topless and/or bottomless dancers, go-go dancers, strippers, or similar entertainers, where such performances are distinguished or characterized by an emphasis on specified sexual activities or specified anatomical areas." Faced with the contention that this language was overbroad because it covered not just adult entertainment but also "the opera '*Salome*,' the play '*Hair*,' and nude ballet," *id.* at 665 (italics added), the Georgia Supreme Court chose to give the language a "narrowing construction": "[W]e interpret the challenged provision as limited to adult entertainment businesses that studies have shown produce undesirable secondary effects." *Id.* at 666. As so construed, the ordinance "d[id] not prohibit the live performance of plays, operas, or ballets at theatres, concert halls, museums, educational institutions, or similar establishments." *Id.*

The Georgia Supreme Court's narrowing construction in *Gravely*, which consisted of grafting a significant and non-textual substantive limitation onto the language of the ordinance, amounted to major surgery. By comparison, the district court's limiting interpretation of the term "patron," through the use of one commonly-accepted definition, was no more than a minor outpatient procedure. On balance, we do not perceive any comity or federalism problems writ large with the district court's approach.

B

When discussing the Cheshire plaintiffs' contention that the challenged provisions (including the "adult motion picture theater"

14                    Opinion of the Court                    20-11326

provision) make establishments subject to the Code's adult business regulations for the display of a single erotic film, the district court concluded that the zoning aspects of the Code were meant to deal with the principal or regular uses of land. *See* D.E. 121 at 20–22. We see no error here either.

The district court reasoned that the Code's zoning provisions do not take aim at isolated or intermittent uses of land. As a general matter, this understanding makes sense to us. *See City of Renton v. Playtime Theatres*, 475 U.S. 41, 54 (1986) ("[M]ak[ing] some areas available for adult theaters and their patrons, while at the same time preserving the quality of life in the community at large by preventing those theaters from locating in other areas . . . is the essence of zoning[.]"); *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1221 (11th Cir. 2008) ("The basic purpose of zoning is to bring complementary land uses together while separating incompatible ones.").

To take one example, the C-4 central area commercial residential districts and the C-5 central business support districts—two of the areas where adult theaters can operate—each list the permitted "principal uses" or "principal purposes" to which land or property can be put. *See* §§ 16.14.003 (C-4), 16-15.003 (C-5). More to the point, the portion of the Code dealing with adult businesses states that the words "*used* or *occupied* include the words intended, designed, or arranged *to be used* or *occupied.*" § 16-29.001 (emphasis in original). The phrase "intended, designed, or arranged" suggests to us, as it did to the district court, that the

challenged provisions do not apply to isolated or intermittent uses of property. A commercial business therefore would not be subject to the adult business zoning regulations and restrictions if it showed an erotic film on a few limited or intermittent occasions and charged a fee for its viewing. *See Schultz v. City of Cumberland*, 228 F.3d 831, 850 (7th Cir. 2000) (construing the phrase "regularly features" in the definitions of "adult theater" and "adult cabaret" in a municipal ordinance to mean "always features" so that it "excludes theatrical venues that present shows like *Hair* or *Equus* for long stretches but not on a permanent basis"). *Compare Purple Onion*, 511 F. Supp. at 1220 (explaining that the 1980 version of the Atlanta City Code included, within its definition of an adult theater, homes receiving certain R-rated movies by cable and hotels allowing guests to purchase erotic/adult films for viewing in their rooms).

It may have been preferable for the Code to use phrases like "regularly uses" or "regularly shows" or "regularly features," or to include a so-called "mainstream exception," to make clearer that the "adult theater" provisions apply only to establishments whose main fare regularly consists of adult material. *See, e.g., Stardust, 3007 LLC v. City of Brookhaven*, 899 F.3d 1164, 1168 (11th Cir. 2018); *Curves, LLC v. Spalding Cnty.*, 685 F.3d 1284, 1291 (11th Cir. 2012). But given the language of the provisions discussed above—"principal uses," "principal purposes," "intended, designed, or arranged"—such additional phrasing was not

constitutionally required. The "adult theater" provisions simply do not apply to isolated or intermittent uses of land.

## IV

In the First Amendment context, the overbreadth doctrine allows a party to challenge a law "on its face because it also threatens others not before the court—those who desire to engage in legally protected expression but who may refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid." *Bd. of Airport Comm'rs v. Jews for Jesus, Inc.*, 482 U.S. 569, 574 (1987) (citation and internal quotation marks omitted). Overbreadth is "strong medicine" that courts should employ "sparingly and only as a last resort." *Broadrick*, 413 U.S. at 613. The Cheshire plaintiffs must therefore show that the "overbreadth [of the challenged provisions is] substantial, not only in an absolute sense, but also relative to [their] plainly legitimate sweep." *United States v. Williams*, 553 U.S. 285, 292 (2008) (emphasis removed). They bear the burden of "demonstrat[ing] from the text of the [challenged provisions] and from actual fact that a substantial number of instances exist in which [the provisions] cannot be applied constitutionally." *N.Y. State Club Ass'n v. City of New York*, 487 U.S. 1, 14 (1988).

"'Substantial overbreadth' is not a precisely defined term." *Doe v. Valencia Coll.*, 903 F.3d 1220, 1233 (11th Cir. 2018) (citation and internal quotation marks omitted). *See* Geoffrey R. Stone et al., The First Amendment 115 (6th ed. 2020) (asking whether "substantiality" should be measured "by the total number of

unconstitutional applications" or by the "ratio of possible constitu-tional to possible unconstitutional applications"). Nevertheless, "we know [that substantial overbreadth] requires a realistic danger that the [law] will significantly compromise recognized First Amendment protections of parties not before the [c]ourt." *Valencia Coll.*, 903 F.3d at 1233. "[T]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984). As a result, succeeding on a claim of substantial over-breadth is "not easy to do." *Valencia Coll.*, 903 F.3d at 1233.

An example of a successful overbreadth claim in the zoning context is *Schad v. Borough of Mt. Ephraim*, 452 U.S. 61 (1981). In that case, a municipality enacted a zoning ordinance that, as con-strued by the state courts, completely prohibited all live entertain-ment—including non-obscene nude dancing—in commercial zones. *See id.* at 65–66. The Supreme Court held that the flat ban was substantially overbroad in violation of the First Amendment. First, the municipality had not adequately justified its "substantial restriction of protected activity." *Id.* at 71. Second, the municipal-ity had not presented evidence (and it was not apparent as a matter of experience) that "live entertainment poses problems"—such as parking, trash, police protection, medical facilities—"more signifi-cant than those associated with various permitted uses." *Id.* at 73. Third, the ordinance was not narrowly drawn to target the "dis-tinctive problems arising from certain types of live entertainment."

*Id.* at 74.  Fourth, the ordinance was not a reasonable time, place, and manner restriction because it "totally exclude[d] all live entertainment, including non-obscene nude dancing that is otherwise protected by the First Amendment." *Id.* at 76.  Fifth, there was no evidence to support the municipality's contention that live entertainment of the kind the plaintiff "wish[ed] to provide" was "available in reasonably nearby areas." *Id.*

## A

In a facial overbreadth challenge, a court must initially "determine whether the enactment reaches a substantial amount of constitutionally protected conduct.  If it does not, then the overbreadth challenge must fail." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 494 (1982).

The Cheshire plaintiffs contend that some of the challenged provisions in the Atlanta City Code "are so broad that they can apply to fully clothed dancers, non-commercial entertainment, R-rated movies, fleeting or occasional presentations of erotic speech, 'dry' establishments which do not serve alcohol, and the sort of mainstream venues—theaters, ballet, sporting events, etc.—that no court would conclude is properly subject to regulation." Appellants' Br. at 8–9.  They also assert that some of the challenged provisions are constitutionally wanting because, among other things, they are not tied to the sale of alcohol and do not include a so-called "safe-harbor" or "mainstream entertainment" exception. *See id.* at 13.

"Adult Bookstore": §§ 16-29.001(3)(a), (g).  According to the Cheshire plaintiffs, the "adult bookstore" provision, § 16-29.001(3)(a), is unconstitutionally overbroad because it is not limited to materials (books, magazines, films, videos, etc.) with an "emphasis" on "specified sexual activities."  See Appellants' Br. at 15–17.  Instead, it includes materials with an "emphasis" on "matters depicting, describing, or relating to . . . 'specified anatomical areas,'" a term that is defined as "(a) [l]ess than completely and opaquely covered (1) human genitals, pubic region, (2) buttocks, and (3) female breasts below a point immediately above the top of the areola; and (b) human genitals in a discernibly turgid state, even if completely and opaquely covered." § 16-29.001(3)(g).

The Sixth Circuit rejected an overbreadth challenge to a similar "adult bookstore" provision in 84 Video/Newstand, Inc. v. Sartini, 455 F. App'x 541, 558–60 (6th Cir. 2011) (unpublished).  But whatever the merits of the Cheshire plaintiffs' argument, it is not properly before us, and we therefore do not address it.

The complaint, which quoted the "adult bookstore" provision, can be read to challenge that provision (along with others) in Count I on First Amendment overbreadth grounds.  See D.E. 29 at ¶¶ 14, 32; Cheshire Holdings, 777 F. App'x at 316.  But after our remand, the Cheshire plaintiffs did not cite or address that provision in their summary judgment briefing—not in their own motion for partial summary judgment on the overbreadth claims and not in their response to the City's motion for summary judgment.  See D.E. 112, 113.  Indeed, when the Cheshire plaintiffs quoted the

language of the provisions they were challenging as substantially overbroad in their partial summary judgment motion, and then discussed those provisions, they omitted the "adult bookstore" provision. *See* D.E. 113 at 4–18 (quoting and analyzing the provisions for "adult motion picture theater," "adult mini-motion picture theater," "adult cabaret," and "adult entertainment establishment," but not the provision for "adult bookstore"). Not surprisingly, the district court did not separately analyze the "adult bookstore" provision in its order, noting that the Cheshire plaintiffs never "offered an explanation as to why [its] language . . . is overbroad." D.E. 121 at 17 n.5.

In sum, the Cheshire plaintiffs did not ask the district court to do anything at summary judgment with respect to the "adult bookstore" provision. In the exercise of our discretion, we decline to pass on a constitutional claim that was never litigated in the district court. *See Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) ("[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.") (quoting *Resolution Trust Corp. v Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)). *See also Bryant v. Jones*, 575 F.3d 1281, 1308 (11th Cir. 2009) ("It is well established in this circuit that, absent extraordinary circumstances, legal theories and arguments not raised squarely before the district court cannot be broached for the first time on appeal.").

**"Adult Motion Picture Theater" & "Adult Mini-Motion Picture Theater": §§ 16-29.001(3)(b)–(c).** With respect to the "adult

motion picture theater" and "adult mini-motion picture theater" provisions, the Cheshire plaintiffs argue that they are unconstitutionally overbroad because they (1) do not contain a "safe harbor" provision for protected speech, (2) "are written in terms as broad as the human mind can conceive as to capture every possible presentation of nudity, erotic art, paid dance performances, or suggestive gesture," and (3) are not limited to commercial establishments. *See* Appellants' Br. at 17. We are not persuaded.

Taking the last point first, the "adult motion picture theater" and "adult mini-motion picture theater" provisions each contain the qualifying phrase "for observation by patrons." Because we have already rejected the contention that the district court erred in narrowly construing the term "patron" to mean a customer in a commercial setting, the Cheshire plaintiffs' assertion that there is no commercial limitation fails.

The first and second points—that the provisions cover a broad swath of protected nudity because of their common reference to "matter depicting, describing or relating to . . . 'specified anatomical areas,'" and that the challenged provisions lack a "safe harbor" for protected speech—are more substantial. The district court repeated its understanding that the Code "does not empower City officials to punish business owners for isolated displays of adult material." D.E. 121 at 23. Nevertheless, to the extent that the "adult motion picture theater" and "adult mini-motion picture theater" provisions could reach "a theatre devoted exclusively to screening films exploring themes of sex and sexuality," the district

court concluded that any overbreadth due to enforcement in such a "marginal case[ ]" was not substantial when compared to the legitimate sweep of the challenged provisions. *See* D.E. 121 at 23 (quoting *Broadrick*, 413 U.S. at 615).

A big obstacle for the Cheshire plaintiffs is the Supreme Court's decision in *City of Renton*. In that case, the Court addressed a First Amendment challenge to a city zoning ordinance prohibiting any adult motion picture theater "from locating within 1,000 feet of any residential zone, single- or multiple-family dwelling, church, or park, and within one mile of any school." 475 U.S. at 44. The ordinance there, like the "adult motion picture theater" and "adult mini-motion picture theater" provisions at issue here, defined an adult motion picture theater as an enclosed establishment used for showing films, cassettes, cable television, or other visual media "distinguished or characteri[zed] by an emphasis on or matter depicting or relating to 'specified sexual activities' or 'specified anatomical areas' . . . for observation by patrons therein." *Id.* (some internal quotation marks omitted). Significantly, the terms "specified sexual activities" and "specified anatomical areas" were defined in the ordinance in the same way they are defined in the challenged provisions here. *Compare* §§ 16-29.001(3)(f)–(g) *with Playtime Theaters, Inc. v. City of Renton*, 748 F.2d 527, 529 n.1 (9th Cir. 1984).

The Supreme Court held in *City of Renton* that the zoning ordinance, which did not ban adult motion picture theaters altogether, was "properly analyzed as a form of time, place, and

manner regulation." 475 U.S. at 46. The ordinance was "aimed not at the *content* of the films shown at 'adult motion picture theaters,' but rather at the *secondary effects* of such theaters on the surrounding community." *Id.* at 47. The ordinance was constitutional because the city was able to rely on the experience of other municipalities and on findings made by the state supreme court as to those effects, and because "[c]ities may regulate adult theaters by dispersing them . . . or by effectively concentrating them." *Id.* at 51–52. The Court closed by stating that, in "[its] view, the First Amendment requires only that [a city] refrain from effectively denying [adult motion picture theaters] a reasonable opportunity to open and operate an adult theater within [its limits], and the ordinance before us easily meets this requirement." *Id.* at 54.

Given the factual similarity of *City of Renton* and its holding, it is difficult, if not impossible, for the Cheshire plaintiffs to demonstrate that the "adult motion picture theater" and "adult mini-motion picture theater" provisions here violate the First Amendment. But even assuming without deciding that these provisions are in some way overbroad because they can reach films or videos depicting nudity, sexuality, or eroticism protected by the First Amendment, the Cheshire plaintiffs' overbreadth claims fail. As we explain later, any overbreadth that might exist in this respect is not substantial.

**"Adult Cabaret" & "Adult Entertainment Establishment":** **§§ 16-29.001(3)(d)–(e).** The Cheshire plaintiffs assert that the "adult cabaret" and "adult entertainment establishment" provisions are

overbroad because they include venues that put on musicals like *Hair* and plays like *Equus*, which have been around for decades and feature some degree of nudity. As they see things, the "adult cabaret" and "adult entertainment establishment" provisions make "no distinction" as to the "nature of the performances," and reach all forms of semi-nude exotic dancing even when no sales of alcohol are involved. *See* Appellants' Br. at 29–30.[3]

The district court rejected the Cheshire plaintiffs' contention, ruling that the City "could not . . . classify entertainment venues as 'adult businesses' based on isolated performances of works containing some amount of nudity or simulated sex." D.E. 121 at 26. Although we have indicated our general agreement with the district court's approach, in this instance we think the Cheshire plaintiffs are correct that the "adult cabaret" and "adult entertainment establishment" provisions are overbroad in at least one respect.

Under the district court's reading, the "adult entertainment establishment" provision contains "three categories of 'adult entertainment,'" with each of those categories set off by the word "or."

---

[3] As a reminder, an "adult cabaret" is "an adult entertainment establishment which features go-go dancers, exotic dancers, strippers, or female topless dancers." § 16-29.001(d). So the "adult cabaret" provision incorporates § 16-29.001(e), the "adult entertainment establishment" provision, and unless otherwise noted we discuss both together.

20-11326            Opinion of the Court                25

*See* D.E. 121 at 26–27.  This reading would break up the provision as follows:

> (e) Adult entertainment establishment: Any place of business or commercial establishment
>
> [1] wherein the entertainment or activity therein consists of nude or substantially nude persons dancing with or without music or engaged in movements of a sexual nature or movements simulating sexual intercourse, oral copulation, sodomy or masturbation, or
>
> [2] wherein the patron directly or indirectly is charged a fee or required to make a purchase in order to view entertainment or activity which consists of persons exhibiting or modeling lingerie or similar undergarments, or
>
> [3] where the patron directly or indirectly is charged a fee to engage in personal contact by employees, devices or equipment, or by personnel provided by the establishment.

§ 16-29.001(3)(e) (spacing and numbering added).

Under Georgia law, the "natural meaning of 'or,' where used as a connective, is to mark an alternative and present choice, implying an election to do one of two [or more] things." *Haugen v. Henry Cnty.*, 594 S.E.2d 324, 326 (Ga. 2004) (citation and internal quotation marks omitted).  So the first independent category of covered conduct set out in § 16-29.001(3)(e) ("activity [which] consists of nude or substantially nude persons dancing with or without

music or engaged in movements of a sexual nature or movements simulating sexual intercourse, oral copulation, sodomy or masturbation") does not limit or circumscribe the second independent category (patrons being charged a fee or being required to make a purchase "in order to view entertainment or activity which consists of persons exhibiting or modeling lingerie or similar undergarments"). This reading is the more grammatically correct. *See Ent. Prods., Inc. v. Shelby Cty., Tenn.*, 588 F.3d 372, 383–89 (6th Cir. 2009) (interpreting similar "adult-oriented establishment" definition). And under this reading, the second category does not incorporate or even reference the first category.

The second category, the one addressing the modeling of "lingerie or similar undergarments," does not require the display of any nudity or the simulation of any sexual activity. On its face it covers an establishment which puts on weekly shows like the now-defunct Victoria's Secret Fashion Show (which featured women modeling bras, panties, and lingerie—in risqué, suggestive, and extravagant fashion on a runway—accompanied by little more than music). Whatever one may think of that type of event, *cf.* Vanessa Friedman, "Why Did We Fall for the Angels?," *N.Y. Times* (June 21, 2021), it is one that constitutes protected expression given that nude dancing receives some First Amendment protection. *See generally Schad*, 452 U.S. at 66; *Fly Fish, Inc. v. City of Cocoa Beach*, 337 F.3d 1301, 1314–15 (11th Cir. 2003). Indeed, the Georgia Supreme Court struck down as unconstitutional an Atlanta ordinance regulating lingerie modeling studios because the City did not show

that it relied on any evidence or studies demonstrating the undesirable secondary effects of such businesses. *See Secret Desires Lingerie, Inc. v. City of Atlanta*, 470 S.E.2d 879, 880 (Ga. 1996). We therefore conclude that, under the reading set out above, the second category in the "adult entertainment establishment" provision is overbroad.

We acknowledge, however, that the "adult entertainment establishment" provision could be construed more narrowly as follows:

> (e) Adult entertainment establishment: Any place of business or commercial establishment wherein
>
> [1] the entertainment or activity therein consists of nude or substantially nude persons
>
> [2A] dancing with or without music or
>
> [2B] engaged in movements of a sexual nature or movements simulating sexual intercourse, oral copulation, sodomy or masturbation, or
>
> [2C] wherein the patron directly or indirectly is charged a fee or required to make a purchase in order to view entertainment or activity which consists of persons exhibiting or modeling lingerie or similar undergarments, or
>
> [2D] where the patron directly or indirectly is charged a fee to engage in personal contact by employees,

> devices or equipment, or by personnel provided by
> the establishment.

§ 16-29.001(3)(e) (spacing and numbering added). Read this way, a business or commercial establishment is only an "adult entertainment establishment" if any of the activities described in [2A]–[2D] involve [1] nude or substantially nude persons.

When faced with a similar choice in interpreting a Tennessee law defining the term "adult-oriented establishment," the Sixth Circuit chose a less grammatical—but readily susceptible—reading of the relevant provision to limit its scope within constitutional bounds. *See Ent. Prods., Inc.*, 588 F.3d at 383–89.

We need not choose between these two possible readings of "adult entertainment establishment." The district court ruled that the risk of overbreadth to mainstream establishments was "marginal when judged against the [provisions'] plainly legitimate scope," and declined to strike down the "adult cabaret" and "adult entertainment establishment" provisions as substantially overbroad. *See* D.E. 121 at 28–29. We agree with that aspect of the district court's order, as explained below.

## B

In *Young v. American Mini Theatres, Inc.*, 427 U.S. 50 (1976), the Supreme Court addressed city zoning ordinances prohibiting the operation of any "adult" movie theater or bookstore (or similar establishments) within 1,000 feet of any other such establishment or within 500 feet of a residential area. The operators

of adult movie theaters challenged the ordinances on several grounds, including that they were unconstitutionally vague. *See id.* at 52–54. The Sixth Circuit struck down the ordinances, but the Supreme Court reversed. We discuss *Young* in detail because of the similarities it shares with this case.

The ordinances at issue in *Young* classified bookstores, motion picture theaters, and mini-motion picture theaters as "adult" establishments based on the "character [i.e., content] of the [materials] or motion pictures which [they] exhibit[ed]." *Id.* at 53. Bookstores were "adult" establishments if they had a "substantial or significant portion of [their] stock in trade, books, magazines, or other periodicals which [we]re distinguished by their emphasis on matter depicting, describing or relating to 'Specified Sexual Activities' or 'Specified Anatomical Areas;'" similarly, motion picture theaters and mini-motion picture theaters were "adult" establishments if they presented "material distinguished or characterized by an emphasis on matter depicting, describing or relating to 'Specified Sexual Activities' or 'Specified Anatomical Areas' for observation by patrons." *Id.* at 52 & n.5. Significantly for our purposes, the language of the ordinances in *Young* mirrored the language of the "adult bookstore," "adult motion picture theater," and "adult mini-motion picture theater" provisions in the Atlanta City Code, as well as the definitions of the terms "specified sexual activities" and "specified anatomical areas." *Compare* §§ 16-29.001(3)(a)–(c), 16-29.001(3)(f)–(g) *with Young*, 427 U.S. at 53 nn. 4 & 5.

The operators in *Young* argued that, even if the ordinances were clear as applied to their own conduct, they "could raise the vagueness issue" through a claim of facial overbreadth. *See Young*, 427 U.S. at 59–60, 59 n.17. Noting that the overbreadth doctrine is "justified by the overriding importance of maintaining a free and open market for the interchange of ideas," *id.* at 60, the Supreme Court concluded that the operators should not be allowed to invoke the doctrine to assert the rights of third parties.[4]

First, the Court did not think that the ordinances would have a "significant deterrent effect on the exhibition of films protected by the First Amendment" because the ordinances contained "characterized by an emphasis" language; for "most films the question will be readily answerable," and for the others there was "no reason why the ordinances we[re] not 'readily subject to a narrowing construction by the state courts.'" *Id.* at 60–61.

> Since there is surely a less vital interest in the uninhibited exhibition of material that is on the borderline between pornography and artistic expression than in the free dissemination of ideas of social and political significance, and since the limited amount of uncertainty is easily susceptible of a narrowing construction, we think this is an inappropriate case in which

---

4 Some portions of Young garnered only a plurality of Justices. But Part I, which addressed vagueness and overbreadth, constituted a majority opinion. See Young, 427 U.S. at 52 n. **.

> to adjudicate the hypothetical claims of persons not before the Court.

*Id.* at 61.

Second, the Court explained that the "only area of protected communication that may be deterred by these ordinances comprises films containing material falling within the specific definitions of 'Specified Sexual Activities' and 'Specified Anatomical Areas.'" *Id.* That the First Amendment "protects some, though not necessarily all, of that material from total suppression does not warrant the further conclusion that an exhibitor's doubts as to whether a borderline film may be shown . . . involves the kind of threat to the free market in ideas and expression that justifies the exceptional [overbreadth] approach to constitutional adjudication in cases like *Dombrowski v. Pfister*, 380 U.S. 479 [(1965)]." *Id.*

Based on *Young*, a case with similar (in some cases identical) zoning provisions, we seriously doubt that an overbreadth challenge is appropriate here. Not only are some of the provisions in the Atlanta City Code susceptible to a limiting construction on their own terms, the Georgia Supreme Court has held that zoning provisions that regulate adult businesses and impact the First Amendment will be read narrowly to not reach mainstream venues, exhibitions, shows, and productions. *See Gravely*, 428 S.E.2d at 665–66. These points are not dispositive, but they do indicate that any potential overreach in the challenged provisions can be handled on a case-by-case basis. *See Young*, 427 U.S. at 60–61.

Even if we assume that some or all of the challenged provisions may be subject to an overbreadth analysis, the Cheshire plaintiffs' claims fall short. Though certain provisions may possibly be overbroad and reach too far (e.g., the second category in the "adult entertainment establishment" provision addressing the modeling of "lingerie or similar undergarments"), the overbreadth is not, to use the Supreme Court's terminology, "substantial . . . in relation to the [provisions'] plainly legitimate sweep." *Williams*, 553 U.S. at 292.

The Cheshire plaintiffs have "conceive[d] of some impermissible applications," *Taxpayers for Vincent*, 466 U.S. at 800, but that alone is insufficient to render the provisions substantially overbroad and therefore facially invalid under the First Amendment. As far as we can tell from the record, there is no evidence that the challenged provisions have been applied in the scenarios posited by the Cheshire plaintiffs. Such proof is not a requirement in an overbreadth case, but the lack of it means that the claims here depend on making a convincing case that the provisions are, on their face, substantially overbroad in relation to their legitimate application. *See N.Y. State Club Ass'n*, 487 U.S. at 14; *Tracy v. Fla. Atl. Univ. Bd. of Trs.*, 980 F.3d 799, 809–10 (11th Cir. 2020). The Cheshire plaintiffs have not made out such a case, particularly given our conclusion that the challenged provisions—which regulate zoning—do not cover isolated or intermittent uses of land. *Cf. Curves, LLC*, 685 F.3d at 1292 (rejecting an overbreadth challenge to an ordinance's definition of an "adult entertainment establishment"

because the plaintiffs' claims that hotels, museums, and other non-sexually oriented places "might at some point offer live (or non-live) nude entertainment plus alcohol presents too remote of a possibility to pose a 'real' and 'substantial' danger to the suppression of rights").

As the Fourth Circuit put it, "[p]erfection is not required to survive an overbreadth challenge—a [law] that shields 'most protected activity' is permissible." *Imaginary Images, Inc. v. Evans*, 612 F.3d 736, 751 (4th Cir. 2010). That, in our view, is the case here.

## V

We affirm the district court's order granting summary judgment in favor of the City of Atlanta on the Cheshire plaintiffs' overbreadth claims.

AFFIRMED.