[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-11820
_____

D.C. Docket No. 9:16-cv-80195-KAM


GERALD GAGLIARDI,
KATHLEEN MACDOUGALL,

                                        Plaintiffs - Appellants,

versus

TJCV LAND TRUST,

                                         Defendant,

CITY OF BOCA RATON FLORIDA,
a Florida Municipal Corporation,

                                        Defendant - Appellee,

CHABAD OF EAST BOCA, INC.,

                                        Defendant - Intervenors - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(May 7, 2018)

Before MARCUS, FAY, and HULL,  Circuit Judges.

MARCUS, Circuit Judge:

At issue today is whether the appellants' lawsuit -- basically claiming that the City of Boca Raton violated the Establishment Clause when it approved the construction of a religious center near their homes -- presents a live case or controversy.  Because a state court has since barred the construction of this center after the lawsuit was commenced, we hold that the case has become moot and is no longer justiciable.  Accordingly, we affirm its dismissal.

I.

A.

The appellants, Gerald Gagliardi and Kathleen MacDougall, are two residents and taxpayers of Seaside Village, a barrier island community in Boca Raton, Florida.  They sued the City of Boca Raton ("the City") for adjusting its zoning rules and approving site development plans for the Chabad of East Boca ("the Chabad"), a religious organization.  The story began in 2007, when the Chabad sought to acquire parcels of land in an area of the City zoned for single-family residential use, with the intention of developing a religious site.  The City introduced a proposed ordinance that, among other things, would have permitted "places of worship" in areas originally zoned for single family residential use.  Some local residents opposed the Chabad's project, which led to a series of

2

extremely contentious meetings and hearings on the proposed ordinance. The proposal never passed, and the City stopped considering the plan in January 2008.

Thereafter, the appellants claim, there were a series of ongoing and secret discussions about the development of another religious site, between the City, the Chabad, and a local developer who owned a different parcel of property at 770 Palmetto Park Road in the Seaside Village area. According to the appellants, the City directed its staff to ensure that the development of the new site would be permitted. In May 2008, the City offered a second proposed ordinance -- Ordinance 5040 -- that would, among other things, add "places of worship" to the definition of "Places of Public Assembly" in the zoning code, thereby clearing the way for the Chabad's use of the Seaside Village property. The property at 770 Palmetto Park Road was zoned B-1, an area permitting uses including places of public assembly.

The relevant portion of the ordinance reads this way:

**Section 28-2, Code of Ordinances, is amended as follows:**

"Places of public assembly" shall mean any area, building or structure where people assemble for a common purpose, such as social, cultural, recreational and/or religious purposes, whether owned and/or maintained by a for-profit or not-for-profit entity, and includes, but is not limited to, public assembly buildings such as auditoriums, theaters, halls, private clubs and fraternal lodges, assembly halls, exhibition halls, convention centers, and places of worship, or other areas, buildings or structures that are used for religious purposes or assembly by persons.

3

"Places of worship" shall mean any area, building or structure where people assemble for religious purposes.

After four public hearings, the ordinance was adopted unanimously by the City Council.  The appellants also claim that the real purpose of the City's actions -- proposing and pushing through Ordinance 5040 in order to allow the development of the religious site -- was hidden from the public.

Seven years later, in 2015, the Chabad's then completed building plans for the Seaside Village property came before the City Council for approval.  The proposal called for a mixed-use, two-story religious space including "a meeting area, religious museum area, parking structure, social hall, children's playroom, kitchen, and a bookstore."  Approval required two zoning variances: a technical change that allowed for the site's planned parking, and approval for the proposed height of the building, forty feet and eight inches, which exceeded the maximum height permissible without special authorization.  The City's planning staff recommended the building be approved, and the Planning and Zoning Board and the City Council agreed in May 2015, authorizing the site development and the requisite variances.

## B.

The appellants filed suit in the United States District Court for the Southern District of Florida in February 2016, alleging violations of the Establishment Clause, the Due Process and Equal Protection Clauses of the Fourteenth

4

Amendment, and the Florida Constitution.  The complaint averred that the City violated the Constitution by giving preferential treatment to the Chabad.  Among other things, the City allegedly revised its zoning ordinances and variances in order to accommodate the Chabad's building plan.  The complaint sought declaratory and injunctive relief as well as compensatory and punitive damages.

The appellants said that construction of the Chabad's site at 770 Palmetto Park Road would substantially increase traffic in their neighborhood, undermine accessibility for emergency vehicles, cause flooding, and alter their property values.  The appellants also argued that the project would change the character of the Seaside Village neighborhood; and, finally, that the approvals and supervision of the property involved the expense of public monies on behalf of a religious organization.

The Chabad and TJCV Land Trust ("TJCV"), the owner of the Seaside Village land parcel, intervened in the lawsuit.  TJCV, however, has since voluntarily dismissed its appeal.  The City and the Chabad both moved to dismiss for failure to state a claim and because the appellants lacked standing in the absence of any constitutionally cognizable injury.  The district court twice dismissed the complaint, each time finding the case was not justiciable because the appellants lacked Article III standing.  The trial court reasoned that increased traffic, difficulties in access for emergency vehicles, and a change in the character

5

of the area were common to the whole community, not particularized to the appellants. Moreover, the court found that the injuries were neither imminent nor concrete but merely potential and hypothetical outcomes from a building that had not yet been built. The district court also rejected the idea that the residents were entitled to taxpayer standing.

During the course of the litigation, an additional lawsuit arose. Unrelated parties, for wholly different reasons, challenged, in a Florida state court, the City's approval of the plans for the same project at the same site. An appellate division of the Palm Beach County Circuit Court quashed the City resolution that had granted approval of the plans. Royal Palm Real Estate Holdings, LLC v. City of Boca Raton, No. 2015-CA-009676 (Fla. Cir. Ct. June 6, 2016). The state court reasoned that the City's approval was improper because the proposal included a "museum." Id. at 4–7. While the City Code provisions for the relevant zoning area allowed "places of public assembly," that definition did not include "museums," which were differentiated from "places of public assembly" in other sections of the City Code. Id. at 6. Thus, the approval of the entire plan, notably including a forbidden museum, violated the zoning code, and therefore the project as proposed was barred. Florida's Fourth District Court of Appeal denied a writ of certiorari, TJCV Land Trust v. Royal Palm Real Estate Holdings, LLC, No. 4D16-2276 (Fla. Dist. Ct. App. Nov. 15, 2016), and there the case ended, inasmuch as the parties did not

seek certiorari review in the Florida Supreme Court.  The parties do not dispute that the judgment of the Palm Beach Circuit Court was final and invalidated this project.

One additional event occurred during the course of this litigation: the City altered its zoning laws, prohibiting variances for buildings exceeding thirty feet in height on certain parcels of land, including the parcel located at 770 Palmetto Park Road.  Boca Raton, Fla., Code of Ordinances, § 28-780.

## II.

The appellants claim they have standing, both because they pled an injury-in-fact and because they had taxpayer standing.  They also assert that this case has not become moot.  We assume, merely for purposes of argument, that the appellants had standing at the outset of this suit.  See, e.g., Glassroth v. Moore, 335 F.3d 1282, 1292 (11th Cir. 2003); Pelphrey v. Cobb Cty., 547 F.3d 1263, 1280–81 (11th Cir. 2008).  However, we need not ultimately decide whether the residents had standing when they commenced the lawsuit because it has become moot.

In order to have constitutional standing, it is axiomatic that a federal action must present a real case or controversy under Article III of the Constitution.  It is also crystal clear that a plaintiff must satisfy "the irreducible constitutional minimum" of standing by establishing three elements:

First, the plaintiff must have suffered an "injury in fact" . . . . Second, there must be a causal connection between the injury and the conduct complained of . . . . Third, it must be "likely," as opposed to merely "speculative," that the injury will be redressed by a favorable decision.

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992) (internal quotations and citations omitted); see also, e.g., ACLU of Fla., Inc. v. Miami-Dade Cty. Sch. Bd., 557 F.3d 1177, 1190 (11th Cir. 2009).  The injury-in-fact must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560 (internal quotation omitted).  In addition to our usual standing analysis, Supreme Court case law dating back to 1923 has recognized that municipal taxpayers have a special form of standing to assert injuries involving the improper use of taxpayer funds in violation of the Establishment Clause context. See Frothingham v. Mellon, 262 U.S. 447, 486–87 (1923); Doremus v. Bd. of Educ., 342 U.S. 429, 433–34 (1952); Pelphrey, 547 F.3d at 1280–81; see also Smith v. Jefferson Cty. Bd. of Sch. Comm'rs, 641 F.3d 197, 209–216 (6th Cir. 2011).

In order for there to be a real case or controversy, however, the issues in play at the outset must remain alive.  Mootness doctrine ensures that a justiciable case or controversy is present "at all stages of review."  Christian Coalition of Fla., Inc. v. United States, 662 F.3d 1182, 1190 (11th Cir. 2011) (quoting Preiser v. Newkirk, 422 U.S. 395, 401 (1975)).  Thus, a case that was once cognizable under

8

Article III becomes moot when "an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit." Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 72 (2013) (internal quotation omitted); see also Already, LLC v. Nike, Inc., 568 U.S. 85, 91 (2013) ("A case becomes moot -- and therefore no longer a 'Case' or 'Controversy' for purposes of Article III -- when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." (quotation and citation omitted)).  Mootness demands that there be something about the case that remains alive, present, real, and immediate so that a federal court can provide redress in some palpable way.

Thus, a case becomes moot when the reviewing court can no longer offer any effective relief to the claimant. See Church of Scientology of Cal. v. United States, 506 U.S. 9, 12 (1992) ("[I]f an event occurs while a case is pending on appeal that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party, the appeal must be dismissed." (quoting Mills v. Green, 159 U.S. 651, 653 (1895))).  This doctrine is rooted in the idea that "a federal court has no authority 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'" Id. (quoting Mills, 159 U.S. at 653).  We are not in the business of issuing advisory opinions that do not "affect the rights of litigants in the case before" us or that merely opine on "what the law would be upon a

9

hypothetical state of facts." Chafin v. Chafin, 568 U.S. 165, 172 (2013) (internal quotations and citation omitted). The Supreme Court has also emphasized that the doctrine of mootness is limited to cases where "it is impossible for a court to grant any effectual relief," explaining that "[a]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." Id. (quotations and citation omitted).

Today, we need not -- in fact we cannot -- reach the merits of the appellants' claims. The relief they seek unmistakably establishes that we can offer no effective remedy. Their essential claim is that the City's approval of the Chabad's proposal to construct a forty-foot-high building, with a museum, on the Seaside Village property, at 770 Palmetto Park Road violated the Establishment Clause. They say that government money has been and will be used for the construction of a single religious institution, but a Florida court has since invalidated the planned construction. None of the relief sought by the appellants -- injunctive, compensatory, or declaratory -- remains viable, and without any tenable claim to redress, the case has become moot.

The appellants have asked the district court to stop this project and prevent the land-use decisions that made this project possible. While the complaint originally also sought compensatory and punitive damages for the alleged past misconduct of the City, at this stage in the case it is clear that they have abandoned

10

any claim for money.  In their reply brief, the appellants said they "do not seek monetary damages."  And, when asked by this Court to brief the matter further in a supplemental pleading, they said this again, asserting that they "do not seek economic remedies."  Still again during oral argument, they affirmed that they are no longer pursuing a claim for damages.  Nor do the appellants seek nominal damages, but even if they did, such an award would not, standing alone, be enough to prevent mootness.  As we have recently explained, when a claim for nominal damages "would serve no purpose other than to affix a judicial seal of approval to an outcome that has already been realized," this species of claim cannot prevent a case from becoming moot.  Flanigan's Enters., Inc. v. City of Sandy Springs, 868 F.3d 1248, 1264 (11th Cir. 2017) (en banc).

That brings us to the injunctive relief the appellants have sought.  Injunctive relief, unlike damages, is inherently prospective in nature.  See, e.g., Dombrowski v. Pfister, 380 U.S. 479, 485 (1965) ("[I]njunctive relief looks to the future . . . ."); see also Hecht Co. v. Bowles, 321 U.S. 321, 329 (1944).  And an injunction is a form of equitable relief.  See Adler v. Duval Cty. Sch. Bd., 112 F.3d 1475, 1477 (11th Cir. 1997) ("Equitable relief is a prospective remedy, intended to prevent future injuries. . . . When the threat of future harm dissipates, the plaintiff's claims for equitable relief become moot because the plaintiff no longer needs protection from future injury.").  It is designed to bar someone from engaging in some

11

unlawful act or series of acts in the future, or alternatively, to compel someone to undertake some act or series of acts in the future.

The injunctive relief sought would bar the City from permitting the Chabad to build a religious meeting facility at 770 Palmetto Park Road. That relief already has been provided by the courts of Florida. Again, the Palm Beach County Circuit Court has invalidated this project completely. This project, in this form, at this location, is dead. And an injunction cannot be fashioned when the prospect of future injury is only speculative; again, there must be a "likelihood of substantial and immediate irreparable injury." City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983). Whether the Chabad will seek some other project, in some other form, at some other time, at this or some other location, remains to be seen. We have indisputable evidence that this project is over. And the complaint has offered not the slightest suggestion that a new Chabad project is in the works or being considered now by the City's employees. As we see it, this is a textbook case for mootness.

The only other form of relief a federal court could grant the appellants would be a declaration under the Declaratory Judgment Act. The statute provides: "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C.

§ 2201(a).  But before a federal court may issue relief under the Act, there still must be a case or controversy that is live, is "definite and concrete," and is susceptible to "specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."  Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240–41 (1937).

The mootness problem remains the same.  An otherwise nonjusticiable case cannot be resurrected simply by seeking declaratory relief.  See, e.g., Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950) (explaining that the Declaratory Judgment Act "enlarged the range of remedies available in the federal courts but did not extend their jurisdiction").  As with any federal suit, when a party seeks declaratory relief, the courts are required to examine whether there is an "actual controversy," without which a declaration may not issue.  See 28 U.S.C. §§ 2201–02; Maryland Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 272 (1941); see also Calderon v. Ashmus, 523 U.S. 740, 749 (1998) (courts cannot grant a declaratory judgment in the absence of a "concrete controversy susceptible to conclusive judicial determination"); Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co., 68 F.3d 409, 414 (11th Cir. 1995) ("Congress limited federal jurisdiction under the Declaratory Judgment Act to actual controversies, in statutory recognition of the fact that federal judicial power under Article III, Section 2 of the United States Constitution extends only to concrete 'cases or controversies.'").

13

A declaratory judgment devoid of "sufficient immediacy and reality" cannot render a case justiciable.  Preiser v. Newkirk, 422 U.S. 395, 402 (1975).  Here there is nothing but the fear that the challenged conduct may recur in some unstated form at an unknown time and place.  We do not have the power to "advise" potential parties about the lawfulness of potential actions that have not and may never occur.  We have no way of knowing whether a new application will be filed by the Chabad and, if so, at what location and pursuant to what terms and details.  And we surely could not speculate about how the City might respond to something as inchoate as that.  Indeed, we have no way of knowing whether Ordinance 5040 will be used again, changed again, or complied with, and if so under what circumstances.

The long and short of it is that this case is moot and therefore nonjusticiable.  We do not have the power to entertain it now or to advise the parties about future events.  The district court properly dismissed the case for want of jurisdiction.

**AFFIRMED.**

14