[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-13218

Non-Argument Calendar

_____

DISCOTHEQUE, INC.,
THELMORE JAMES LESTER,
As Executor of the Estate of James Thelmore Lester,
and Next of Kin,

Plaintiffs-Appellants,

*versus*

AUGUSTA-RICHMOND COUNTY, GEORGIA,
MAYOR HARDIE DAVIS, JR.,
In his individual and official capacity,
WILLIAM FENNOY,
In his individual and official capacity,
DENNIS WILLIAMS,
In his individual and official capacity,

MARY DAVIS,

In her individual and official capacity, et al.,

Defendants-Appellees.

————————————

Appeal from the United States District Court

for the Southern District of Georgia

D.C. Docket No. 1:19-cv-00074-JRH-BKE

————————————

Before WILSON, ROSENBAUM, and ANDERSON, Circuit Judges.

PER CURIAM:

This appeal requires us to consider the constitutionality of several provisions of an ordinance adopted by Augusta, Georgia (the "City"), which subjects adult-entertainment businesses to various permitting, licensing, and zoning regulations. The owners and operators of two longstanding nude-dancing clubs in downtown Augusta, Discotheque Lounge and Joker's Lounge, sued the City and others claiming in part that the ordinance and related regulations violated the First Amendment. The district court granted summary judgment to the City on some claims and concluded that the plaintiffs lacked standing on other claims, and this appeal followed. After careful review of the record and the parties' briefs, we affirm.

## I.

In 2003, the City enacted an adult-entertainment ordinance with the stated purpose of combating negative secondary effects associated with adult-oriented businesses. *See* Augusta-Richmond County Code ("A.R.C.C.") § 6-1-1. The ordinance did several things. It imposed licensing and permitting requirements for "adult entertainment establishments," including "erotic dance establishments" and "adult dancing establishments." *Id.* §§ 6-1-2, 6-1-5, 6-1-6, 6-1-11. It prohibited the sale or transfer of permits to operate adult-entertainment establishments (the "non-transferability provision"). *Id.* § 6-1-15. The ordinance also regulated certain conduct within such establishments. *Id.* §§ 6-1-3, 6-1-4. And it limited the locations where adult-entertainment establishments could operate, though it allowed businesses existing as of January 2003 to continue operating as nonconforming uses. *Id.*, § 6-1-9(e).

When the 2003 Ordinance passed, Discotheque, Inc., owned and operated two nude-dancing clubs in downtown Augusta, Joker's Lounge and Discotheque Lounge, which were first opened by James Thelmore Lester[1] ("Lester") in the early 1970s. Despite being in prohibited locations, the two clubs were permitted to continue operating as lawful nonconforming uses. Discotheque assumed ownership of the clubs in 1981, but Lester maintained the

---

[1] We note that James Thelmore Lester and Thelmore James Lester are two different people. As we note later in this opinion, Thelmore James Lester served as executor of Lester's estate.

4                        Opinion of the Court                    21-13218

necessary permits for both businesses individually in his own name until his death in April 2019, after which Lester's family took over ownership of Discotheque. Before Lester's death, the City considered but ultimately rejected an exception to the non-transferability provision to allow inheritance of permits to operate adult-entertainment establishments.

Soon after Lester's death, Plaintiffs-Appellants Discotheque and Thelmore James Lester, as executor of Lester's estate (collectively, "Plaintiffs"), sued the City out of "fear that Augusta will attempt to enforce the [] non-transferability provision[] against them." They alleged that certain licensing and permitting provisions of the 2003 Ordinance and related alcohol, zoning, and business tax regulations threatened to put them out of business and deprived them of rights protected by the First and Fourteenth Amendments. Plaintiffs would not have been able to obtain new adult-entertainment permits or alcohol licenses because of the ordinance's location requirements.

The district court *sua sponte* raised the issue of Plaintiffs' standing, given the lack of allegations in the complaint that the City had "enforced or attempted to enforce the regulations in question against Plaintiffs." After a hearing and supplemental briefing, the court determined that Plaintiffs had standing to challenge the licensing and business tax regulations. But the court found that Plaintiffs lacked standing to challenge the alcohol or zoning regulations in part because "the real issue and real injury to Plaintiffs is the inability to obtain proper permitting to continue operating the

Lounges as adult entertainment businesses."  In the court's view, the clubs' continued operation "depend[ed] on the challenge[]" to the licensing regulations, not the other challenges.

The district court then granted summary judgment to the City on the remaining issues.  It rejected Plaintiffs' arguments that the 2003 Ordinance's definitions of "erotic dance establishment" and "adult dancing establishment" were overly broad and impermissibly vague.  It also concluded that the ordinance was not subject to strict scrutiny as a content-based regulation under *Reed v. Town of Gilbert, Arizona*, 576 U.S. 155, 163 (2015), and that intermediate scrutiny was satisfied.  Plaintiffs now appeal.

## II.

We review *de novo* the grant of summary judgment, viewing the evidence and drawing all reasonable inferences in favor of Plaintiffs, the nonmoving parties.  *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1284 (11th Cir. 1997).  We also review standing issues *de novo*.  *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1210 (11th Cir. 2019).

## III.

We start with Plaintiffs' challenge to the 2003 Ordinance's licensing and permitting regulations.  They argue that certain definitions are overbroad, that the regulations are content-based and subject to strict scrutiny, and that, even if intermediate scrutiny applies, the regulations still fail the proportionality test set forth by Justice Kennedy in his concurrence in *City of Los Angeles v.*

*Alameda Books, Inc.*, 535 U.S. 425 (2002). We consider these arguments in turn.

## A. *The challenged definitions are not overbroad.*

Plaintiffs claim that the 2003 Ordinance's definitions of "adult dancing establishment" and "erotic dance establishment" are unconstitutionally overbroad because they fail to exclude isolated instances of nudity or serious artistic works that feature some degree of nudity.

In the First Amendment context, the overbreadth doctrine allows a party to challenge a law on its face, rather than as applied to him or her, because it also threatens others not before the court who may refrain from engaging in legally protected expression rather than risking prosecution or challenging the law. *Cheshire Bridge Holdings, LLC v. City of Atlanta, Ga.*, 15 F.4th 1362, 1370 (11th Cir. 2021). Because declaring a law overbroad is a remedy of "last resort," plaintiffs must show that the challenged law is "substantial[ly] overbroad" relative to its legitimate sweep. *Id.* "[S]ubstantial overbreadth requires a realistic danger that the law will significantly compromise recognized First Amendment protections of parties not before the court." *Id.* (cleaned up). A few conceivable "impermissible applications of a statute [are] not sufficient to render it susceptible to an overbreadth challenge." *Id.* (quotation marks omitted). Rather, "the danger to the suppression of First Amendment rights must be both 'real' and 'substantial.'" *Curves, LLC v. Spalding Cnty.*, 685 F.3d 1284, 1292 (11th Cir. 2012).

21-13218                Opinion of the Court                7

When construing the language of a challenged provision, "a federal court can in appropriate circumstances provide a limiting construction of a state or local law to avoid constitutional problems." *Cheshire Bridge*, 15 F.4th at 1368. But "the authority to narrowly interpret a state or local law" does not include "rewrit[ing] a . . . law to conform it to constitutional requirements." *Id.* (quotation marks omitted).

The 2003 Ordinance defines different types of businesses that are subject to its terms as "adult entertainment establishments." Covered businesses include "adult dancing establishment[s]" and "erotic dance establishment[s]," which are defined as follows:

> (b) *Adult dancing establishment.* A business that features dancers displaying or exposing specific anatomical areas.
>
> . . . .
>
> (g) *Erotic dance establishment.* A nightclub, theater or other establishment which features lives performances by topless and/or bottomless dancers, go-go dancers, strippers or similar entertainers, where such performances are distinguished or characterized by an emphasis on specific sexual activities or specific anatomical areas.

The ordinance further defines "specified sexual activities" and "specified anatomical areas," though these terms are not directly at issue here.

Plaintiffs have not shown that the two challenged definitions are substantially overbroad. We acknowledge that both definitions lack an express "safe harbor" or exception for occasional presentations of adult content or performances in mainstream venues. As we explain below, though, we are not persuaded that the absence of such an express exception renders the definitions overbroad. *See Cheshire Bridge*, 15 F.4th at 1371–72, 1376–78 (rejecting an overbreadth challenge to adult-entertainment-business definitions despite the lack of a safe harbor or mainstream exception).

For starters, the Georgia Supreme Court has applied a narrowing construction to an identically worded definition of "erotic dance establishment" in rejecting similar overbreadth arguments. *Gravely v. Bacon*, 429 S.E.2d 663, 665–66 (Ga. 1993). Faced with the argument that the definition was overbroad because it covered not just adult entertainment but also "the opera 'Salome,' the play 'Hair,' and nude ballet," *id.* at 665, the court chose to give the language a "narrowing construction" consistent with its stated purpose: "[W]e interpret the challenged provision as limited to adult entertainment businesses that studies have shown produce undesirable secondary effects." *Id.* at 666. As so construed, the ordinance "d[id] not prohibit the live performance of plays, operas, or ballets at theatres, concert halls, museums, educational institutions, or similar establishments." *Id.*

21-13218                Opinion of the Court                9

Based on *Gravely*'s holding, the 2003 Ordinance's definition of "erotic dance establishment" likewise does not reach mainstream establishments that may occasionally provide nude content. Nor is "a serious artistic play or ballet" likely to "communicate an erotic message with an emphasis on specified sexual activities or anatomical areas." *Id.* at 666. While Plaintiffs dispute *Gravely*'s "circular reasoning," it remains good law in Georgia, where the ordinance applies.[2] *See Cheshire Bridge*, 15 F.4th at 1369 (looking to state law to define terms in an ordinance). We therefore interpret the 2003 Ordinance's definition of "erotic dance establishment" consistent with *Gravely*. And with that narrowing construction, any potential overbreadth is not "substantial" in relation to the provision's legitimate sweep and "can be handled on a case-by-case basis." *See id.*; *United States v. Waymer*, 55 F.3d 564, 569 (11th Cir. 1995) (overbreadth "is not to be invoked when a limiting construction has been or could be placed on the challenged statute").

No Georgia court has opined on the meaning of "adult dancing establishment," as far as we are aware, but we are similarly unpersuaded that it poses a "realistic" and "substantial" danger to the

---

[2] Plaintiffs point out that *Gravely* cited the U.S. Supreme Court's decision in *California v. LaRue*, 509 U.S. 109, 118–19 (1972), which relied in part on the Twenty-first amendment to uphold a prohibition of certain sexual exhibitions in premises licensed to serve alcoholic beverages. While the Supreme Court later "disavow[ed] [*LaRue*'s] reasoning insofar as it relied on the Twenty-first Amendment," it reaffirmed the "holding in *LaRue*." *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 515–16 (1996).

suppression of First Amendment rights.  *See Cheshire Bridge*, 15 F.4th at 1371, 1377–78.  Plaintiffs maintain that the definition could cover a lounge which shows videos occasionally containing nude dancers.  Yet a lounge showing videos in the background, even of nude dancers, hardly seems to us like a business that "features dancers."

In any case, a few conceivable "impermissible applications of a statute [are] not sufficient to render it susceptible to an overbreadth challenge."  *Id.* at 1370.  Plaintiffs do not suggest that the definition has actually been applied in the scenarios they posit.  *See id.* at 1377–78 ("Such proof is not a requirement in an overbreadth case, but the lack of it means that the claims here depend on making a convincing case that the provisions are, on their face, substantially overbroad in relation to their legitimate application.").  Nor do they offer any convincing reasons to think that the definition of "adult dancing establishment," in contrast to the definition of "erotic dance establishment," applies beyond the kinds of "adult entertainment businesses that studies have shown produce undesirable secondary effects."  *Gravely*, 429 S.E.2d at 665–66.  In other words, the definition is subject to the same narrowing construction applied in *Gravely*.  Moreover, as the district court pointed out, isolated instances of live adult entertainment in Augusta are governed by separate regulations, *see* A.R.C.C. § 6-6-42, which do not apply to "dancers or other performers performing live on a regular basis as adult entertainment establishments," further reinforcing

21-13218              Opinion of the Court              11

the narrow scope of the 2003 Ordinance and its application to regular, rather than isolated, uses of a business.

For these reasons, we conclude that, just like with the definition of "erotic dance establishment," the risk of overbreadth from the definition of "adult dancing establishment" is marginal when judged against the provision's plainly legitimate sweep and can be handled on a case-by-case basis.[3] *See Cheshire Bridge*, 15 F.4th at 1377–78.

B. *Strict scrutiny does not apply.*

Plaintiffs maintain that the 2003 Ordinance's prohibition on transferring adult-entertainment permits is subject to and fails strict scrutiny. In Plaintiffs' view, the predominant purpose of the ordinance was to entirely eliminate adult live entertainment in Augusta. And according to Plaintiffs, because the ordinance expressly subjects some businesses to restrictions based on the content of the expression they offer, it must be evaluated as a content-based regulation under the Supreme Court's decision in *Reed*, which

---

[3] Plaintiffs' claim that mainstream venues could start "offer[ing] plays, operas and ballets featuring performances that are distinguished or characterized by an emphasis on specified sexual activities or specified anatomical areas" up to "365 days a year" does not represent a real and substantial danger of suppression of rights. *Cf. Curves, LLC v. Spalding Cnty.*, 685 F.3d 1284, 1292 (11th Cir. 2012) ("[T]hat hotels or museums or other non-sexually oriented places that do not regularly offer live entertainment might at some point offer live (or non-live) nude entertainment plus alcohol represents too remote of a possibility to pose a 'real' and 'substantial' danger of suppression of rights.").

Plaintiffs say fundamentally changed First Amendment analysis. We start with the well-established secondary-effects doctrine and then turn to *Reed*.

### 1.  The Secondary-Effects Doctrine

"The Supreme Court has made clear that when the purpose of an adult entertainment ordinance is to ameliorate the secondary effects of adult businesses, intermediate scrutiny applies." *Zibtluda, LLC v. Gwinnett Cnty. ex rel. Bd. of Comm'rs of Gwinnett County*, 411 F.3d 1278, 1284 (11th Cir. 2005); *see City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 448 (2002); *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 46–50 (1986).

While secondary-effects ordinances generally are not "strictly content neutral, they are simply treated as such." *Zibtluda*, 411 F.3d at 1284.  We have explained that these types of ordinances "define the regulated conduct by its expressive content, and, to this extent, they are 'content-based.'" *Fly Fish, Inc. v. City of Cocoa Beach*, 337 F.3d 1301, 1304 (11th Cir. 2003).  Their purpose is "not to ban the expressive conduct," though, but rather to "regulate[] the manner of presentation of the erotic message." *Id.* at 1307–08.  The 2003 Ordinance falls within this general category because it regulates, but does not ban, the expressive conduct. *See id.* at 1307–09.

"Although content-based, such a regulation will be treated as if it were content-neutral if it serves a substantial government purpose that is unrelated to the suppression of the expressive

conduct." *Id.* at 1306. And "it is well established that combating the harmful secondary effects of adult businesses, such as increased crime and neighborhood blight, is a substantial government interest." *Zibtluda*, 411 F.3d at 1285 (cleaned up).

So to determine whether the 2003 Ordinance is properly treated as content-neutral, "the key question is whether the [City] has demonstrated that the purpose of the [ordinance] is to combat negative secondary effects of adult businesses." *Zibtluda*, 411 F.3d at 1285. The City's burden in this regard is "not high." *Id.* at 1286. "Nevertheless, the enacting body must cite to *some* meaningful indication—in the language of the code or in the record of legislative proceedings—that the legislature's purpose in enacting the challenged statute was a concern over secondary effects rather than merely opposition to proscribed expression." *Id.*

Here, the 2003 Ordinance was "facially sufficient to meet the low evidentiary burden local governments face when enacting ordinances to ameliorate secondary effects of adult businesses." *Id.* at 1287. The first section of the ordinance, § 6-1-1, states that its purpose is to combat the well-documented secondary effects of adult-entertainment businesses. *See id.* at 1286. Its supporting findings and rationale are not materially different from what we found to be facially sufficient in *Zibtluda*. *See id.* at 1286–87. And Plaintiffs do not "in any way dispute the soundness of the secondary effects rationale" of the City. *Id.*

Nevertheless, Plaintiffs maintain that the City was motivated by a desire to suppress the protected speech and to shut down

all adult businesses in Augusta.  They claim that the "record" shows that "the challenged ordinances eliminated adult live entertainment entirely in Augusta-Richmond County" and "were adopted with the knowledge that would be their effect."  But they fail to cite to any part of the record to support those assertions.  *See* Fed. R. App. P. 28(a)(8) (stating that an appellant's argument must contain "citations to the authorities and parts of the record on which the appellant relies").

In any case, Plaintiffs' proffered evidence is "entirely circumstantial, inferential, and remote."  *Zibtluda*, 411 F.3d at 1288.  They assert that other adult clubs have closed since the ordinance passed, but they make no effort to connect those closures to the ordinance.  They also cite the City's prior ban on alcohol in adult businesses—which has since been repealed—but that is not enough on its own, since we have upheld "nude-dancing-while-selling-alcohol bans" under the secondary-effects doctrine.  *Curves*, 685 F.3d at 1290.

Plaintiffs' evidence is not the kind of circumstantial evidence that casts "direct doubt" on the secondary-effects rationale.  *See Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cnty.*, 630 F.3d 1346, 1355 (11th Cir. 2011) ("*Peek-A-Boo II*") (once the government meets its initial burden, "the burden shifts to the plaintiff to cast *direct doubt* on this rationale, either by showing that the evidence does not support its rationale or by producing evidence disputing the local government's factual findings" (quotation marks omitted) (emphasis added)).  Because Plaintiffs have not cast direct doubt on the secondary-effects rationale, the district court properly

reviewed the 2003 Ordinance under intermediate scrutiny.  *See Zibtluda*, 411 F.3d at 1288–89.

### 2.  *Reed v. Town of Gilbert, Arizona*

Nor are we persuaded that the Supreme Court's decision in *Reed* requires strict scrutiny.  The Supreme Court in *Reed* considered whether a municipal sign code improperly treated signs differently, depending on the category into which the sign fell, such as "ideological," "political," or "temporary directional."  *Reed v. Town of Gilbert*, 576 U.S. 155, 159–60 (2015).  The Ninth Circuit had upheld the ordinance as a content-neutral regulation because there was no evidence of an impermissible motive.  *Id.*

The Supreme Court reversed, concluding that the Ninth Circuit skipped "the crucial first step in the content-neutrality analysis: determining whether the law is content neutral on its face." *Id.* at 165.  And it made clear that "[a] law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of animus toward the ideas contained in the regulated speech."  *Id.*

*Reed* calls into question the reasoning undergirding the secondary-effects doctrine.  That doctrine permits courts to treat a law that might otherwise be considered content-based—because it "defines the regulated conduct by its expressive content"—as content-neutral so long as it can be justified by a legitimate interest in combating the harmful secondary effects of adult entertainment.  *Fly Fish*, 337 F.3d at 1304.  *Reed* rejected similar reasoning as applied

to a sign ordinance, explaining that "an innocuous justification cannot transform a facially content-based law into one that is content neutral."  576 U.S. at 166.

Because *Reed* did not address the secondary-effects doctrine, though, we cannot interpret it as abrogating either the Supreme Court's or this Circuit's secondary-effects precedents.  The Supreme Court has directed lower courts to follow its precedents with "direct application in a case," even if that precedent "appears to rest on reasons rejected in some other line of decisions," leaving to the Court "the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989); *see also Fla. League of Prof'l Lobbyists, Inc. v. Meggs*, 87 F.3d 457, 462 (11th Cir. 1996) ("[W]e are not at liberty to disregard binding case law that is so closely on point and has been only weakened, rather than directly overruled, by the Supreme Court.").  The secondary-effects precedents of the Supreme Court and this Court have direct application here, while *Reed* does not, so we must apply the secondary-effects doctrine even though it may appear to rest on reasoning rejected in *Reed*.[4]

C.  *Intermediate scrutiny is satisfied.*

---

[4] We are unpersuaded that Plaintiffs' zoning/non-zoning dichotomy has legal force when the ordinances in question were designed to combat the adverse secondary effects of adult entertainment.  *See Fly Fish*, 337 F.3d at 1308 (recognizing that the Supreme Court has extended "the secondary effects rationale of *Renton* beyond its zoning context to the regulation of expressive conduct").

21-13218                  Opinion of the Court                  17

Plaintiffs argue in the alternative that, if strict scrutiny does not apply, the district court erred in not applying the "proportionality test" articulated by Justice Kennedy in his *Alameda Books* concurrence. In Plaintiffs' view, the 2003 Ordinance's permit-non-transferability provision, § 6-1-15, fails that test because it will have the effect of closing "the last two nude dancing establishments in Augusta" and preventing other adult-entertainment clubs from taking their place. Because the ordinance does not "leave the quantity and accessibility of speech substantially intact," according to Plaintiffs, it fails the proportionality test.

As we explained above, "a content-based, but treated as content-neutral, regulation of expressive conduct is entitled to an intermediate level of scrutiny" as a form of time, place, and manner regulation under *Renton* and *Alameda Books*.[5] *Fly Fish*, 337 F.3d at 1306–07. Recognizing that "a city may not regulate the secondary effects of speech by suppressing the speech itself," *Id.* at 1310 (quoting *Alameda Books*, 535 U.S. at 445 (Kennedy, J., concurring), we must determine whether the regulation is "narrowly tailored to serve the government interest at issue and allows for reasonable alternative avenues of expression," *Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cnty.*, 337 F.3d 1251, 1265–66 (11th Cir. 2003) ("*Peek-A-Boo I*").

---

[5] The parties largely agree that *Renton* supplies the appropriate framework here, and we see no reason to second-guess them.

In *Fly Fish*, for example, we held that a zoning ordinance failed this test because it "effectively zoned [the adult club] out of existence." 337 F.3d at 1312. We explained that "*Renton* requires that an adult-entertainment ordinance refrain from effectively denying adult businesses a reasonable opportunity to open and operate an adult [business] within the city." *Id.* at 1310 (cleaned up). Because the ordinance in that case provided fewer locations than there were then-operating adult establishments, effectively squeezing out the adult business and preventing it from relocating, we held that the ordinance failed to leave open alternative means of expression and so was unconstitutional. *Id.* at 1311–12.

Importantly, though, "[t]he test is whether the regulation leaves open reasonable *alternative* avenues of expression; it does not guarantee that the plaintiffs will be able to operate in their present locations." *Lady J. Lingerie, Inc. v. City of Jacksonville*, 176 F.3d 1358, 1365–66 (11th Cir. 1999). That a regulation may "force [a business] to move" "doesn't matter" so long as it leaves open reasonable alternatives. *Id.*

Plaintiffs repeatedly stress that the non-transferability provision, § 6-1-15, will have the effect of closing "the last two nude dancing establishments in Augusta," because it prevents them from obtaining Lester's vested rights to operate in their current locations. They maintain that no substantial interest is served "by tying [an adult] business's continued existence to the lives of the original owners." Plaintiffs also claim that the 2003 Ordinance prevents

other adult-entertainment businesses from opening by "hobbl[ing] the key components necessary to the operation of those venues."

Here, Plaintiffs have not shown that the prohibition on transferring adult-entertainment permits, § 6-1-15, is not narrowly tailored or otherwise fails to "allow[] for reasonable alternative avenues of expression." *Peek-A-Boo I*, 337 F.3d at 1265–66. The non-transferability provision furthers the City's permitting scheme for adult-entertainment businesses, and by extension its goal of reducing secondary effects, by ensuring that the current owners or operators of such businesses were evaluated by and received their permits directly from the City. It also protects the interests of existing businesses while, at the same time, allowing the City to gradually transition to the new-location requirements. Furthermore, nothing in the non-transferability provision prevents Plaintiffs or anyone else, following the death of a prior owner, from applying for their own permit to operate the business.

The crux of Plaintiffs' claims seems to be that they have a First Amendment right to continue offering nude dancing (and alcohol) at their current locations, but they are mistaken. That Plaintiffs lost out on grandfathered rights under state law does not violate the First Amendment because "[t]he Constitution does not require a 'grandfathering' provision for existing nonconforming adult businesses."[6] *Daytona Grand, Inc. v. City of Daytona Beach,*

---

[6] "[A]ny vested right to continue operating as a lawful nonconforming use derives from state law." *Daytona Grand,* 490 F.3d at 872 n.17. It does not

*Fla.*, 490 F.3d 860, 872 n.17 (11th Cir. 2007); *David Vincent, Inc. v. Broward Cnty.*, 200 F.3d 1325, 1332 (11th Cir. 2000). Nor is the First Amendment violated solely because Plaintiffs may be forced to relocate to another location to continue offering nude dancing. *See Lady J. Lingerie*, 176 F.3d at 1365–66 ("The test is whether the regulation leaves open reasonable alternative avenues of expression; it does not guarantee that the plaintiffs will be able to operate in their present locations."). And Plaintiffs have made no showing that the City's regulations deny them a reasonable opportunity to relocate, notwithstanding that they may not wish to do so for personal or economic reasons. *See Fly Fish*, 337 F.3d at 1310; *Daytona Grand*, 490 F.3d at 871 ("[T]he economic feasibility of relocating to a site is not a First Amendment concern.").

We have analyzed these issues in accordance with precedent from this Court and the Supreme Court. To the extent Plaintiffs claim that Justice Kennedy's concurrence in *Alameda Books* created a distinct proportionality test when applying intermediate scrutiny, in addition to what we have discussed above, we disagree. The plurality opinion in *Alameda Books* directly addressed Justice Kennedy's position that "[a] city may not assert that it will reduce secondary effects by reducing speech in the same proportion." 535 U.S. at 443. The plurality viewed this "unobjectionable proposition" as "a reformulation of the requirement that an ordinance

_____

appear, however, that Plaintiffs raised an independent state-law claim that they have a vested right to continue operating as a lawful nonconforming use.

warrants intermediate scrutiny only if it is a time, place, and manner regulation and not a ban." *Id.* at 443.  In other words, the plurality viewed Justice Kennedy's comments about proportionality as relevant to the question of *whether* intermediate scrutiny applies, not as part of the intermediate-scrutiny analysis itself under *Renton*'s framework.  Because Plaintiffs' view of Justice Kennedy's concurrence cannot be reconciled with the plurality opinion, it is not binding precedent.

For these reasons, we affirm the grant of summary judgment on Plaintiffs' claims challenging the licensing and permitting requirements.

## IV.

Plaintiffs also brought claims challenging the constitutionality of the City's alcohol and zoning regulations, which the district court dismissed for lack of standing.  Plaintiffs appeal that ruling, but we decline to address it.  *See Big Top Koolers, Inc. v. Circus-Man Snacks, Inc.*, 528 F.3d 839, 844 (11th Cir. 2008) (stating that we may affirm on any ground supported by the record).

Even assuming Plaintiffs had standing at the outset of the case, these issues are moot because neither we nor the district court can offer an "effective remedy" at this time.  *Gagliardi v. TJCV Land Trust*, 889 F.3d 728, 733 (11th Cir. 2018) ("[A] a case becomes moot when the reviewing court can no longer offer any effective relief to the claimant.").  And "[w]e are not in the business of

issuing advisory opinions that do not affect the rights of litigants in the case before us." *Id.*

In their complaint, Plaintiffs sought declaratory relief because they were "uncertain as to their rights and remedies" under the alcohol and zoning ordinances. Yet these challenges were intertwined with, and ancillary to, their challenge to the non-transferability provision, § 6-1-15. Plaintiffs did not claim that, notwithstanding § 6-1-15, they retained grandfathered rights under state law, or that the alcohol and zoning regulations were invalid for reasons independent of § 6-1-15.[7] Nor does the City appear to dispute that, if § 6-1-15 is invalid, Plaintiffs could continue to offer both nude dancing and alcohol at their current locations.

Because we have concluded that § 6-1-15 survives constitutional scrutiny, we do not see, and Plaintiffs have not explained, how remanding for further proceedings on the alcohol or zoning regulations would have any practical effect on their rights. *See Gagliardi*, 889 F.3d at 733; *see also Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1210 (11th Cir.1991) ("A fundamental principle of constitutional law dictates that a federal court should refuse to decide a constitutional issue unless a constitutional decision is

---

[7] To be sure, at the show-cause hearing on standing, Plaintiffs' counsel stated that they "want[ed] the [c]ity to recognize the vested right as though Mr. Lester had not died," and hinted at challenging the alcohol and zoning laws in the event § 6-1-15 was upheld. But Plaintiffs do not articulate any argument along these lines in their briefing on appeal.

strictly necessary."). We therefore affirm the dismissal of these claims.

## V.

For these reasons, we affirm the district court's judgment in favor of the City.

**AFFIRMED.**